JOHNSON, Judge.
This is an appeal from a judgment entered by the Circuit Court of Duval County, Florida, Judge Gooding presiding, which judgment was entered from issues raised by the complaint, and amended answer and counterclaim and a stipulation filed in evidence as plaintiff’s exhibit “A,” and testimony submitted. The case was tried without a jury.
The final judgment was some ten pages in length and set out in great detail the facts involved, including the custom of the trade and dates, etc. Its consummate result was, that plaintiff (appellee herein and so referred to hereafter) had a claim, lien, right and interest in and to each mobile home involved in this suit, which was and is superior to the right, title, lien or interest of the defendant (appellant herein and so referred to hereafter) in and to said mobile homes to the extent of the unpaid principal amount plus interest due or to become due in respect to each such mobile home. Said order also provided that .the plaintiff had a claim, right, lien and interest prior and superior to that of the defendant on the proceeds of the first retail sale of each mobile home, “that is, on the proceeds past and future received through installment payments or otherwise by the defendant *292 under the conditional sales contracts or other security instruments executed by the original purchasers, equity purchasers or purchasers after repossession, * * * less reasonable handling charges.”
A constructive trust was declared by said judgment, on the proceeds of sale, including money already collected by the defendant on the conditional sales contracts as well as all future collections. Provision was made for periodic payments by the defendant to the plaintiff. Said order further provided that the appellee should deliver the manufacturer’s statement of origin to the appellant as to each home and the appellant directed to apply for title certificate on each home, showing plaintiff’s lien and then return the title certificates to the plaintiff.
The facts from which this controversy arose can be stated briefly as follows: Armor Manufacturing Company (or Armor Mobile Homes Sales Corp. of Georgia) manufactured mobile homes. Cardair Homes, Inc., Jacksonville, Florida, was a dealer in mobile homes and in cooperation with Armor obtained “floor pla? ” financing on said units through Custom Finance Co. of Vicksburg, Mississippi. The C.O. and bill of sale were sent to Custom Finance, who in turn paid Armor.
The floor plan contract between Cardair Homes, Inc. and Custom Finance Co., consisted of a “floor plan chattel mortgage,” which purports to encumber each mobile home for such amounts as were necessary to pay the manufacturer, Armor, and Armor was still liable, also, to Custom for the money advanced on the floor plan. In this contract or chattel mortgage, section 4 thereof, was the following provision:
“4. The mortgagor shall have the right to sell said property at retail in the regular course of business; provided, however, that the proceeds shall be fully and faithfully accounted for and promptly paid over to the mortgagee and applied, to the extent thereof, to the payment and discharge of said note and indebtedness hereby secured.”
The trial court found and so held in his final judgment, inter alia: “The terms of the transaction between plaintiff and Car-dair were either total payment within ninety days of the date of the mortgage or ten per cent curtailment or reduction of the principal amount plus interest within that period.”
Lot checks were made on the lot of Car-dair by a representative of Custom and it was discovered that certain units were not on the lot nor had Custom been paid therefor, and were therefore sold out of trust. Also, ninety days curtailment payments were made by Cardair and accepted by Custom, after the discovery of the “out of trust” sales. This fact was not included in the final judgment as a finding of the court, however, but was not disputed by the plaintiff.
The trial court further found that the retail purchasers from Cardair had no knowledge of the fact that the plaintiff held a floor plan chattel mortgage on the mobile homes, but that each purchaser failed to take any step to cause a certificate of title to be issued pursuant to the Florida Motor Vehicle Law. That in each instance of sale the purchaser executed a conditional sales contract to Cardair which in turn was assigned by Cardair to the defendant.
In each instant of the assignment of the conditional sales contract to the defendant, the dealer, Cardair, would take to the defendant the dealer’s copy of the original invoice of the respective homes, along with the executed conditional sales contract, containing an assignment thereof and some papers showing setup for payment, interest, etc. The copy of the invoice showed at one point thereon the statement: “Terms: 100% Custom Finance, Vicksburg, Mississippi.”
There was no dispute about the fact that the defendant did not demand nor receive at or before paying Cardair for the assigned conditional sales contract evidence of title or origin, nor was inquiry made to the Motor Vehicle Commissioner of Florida as to whether title had been applied for.
*293 On the homes involved here, the original C.O.’s were never delivered to the defendant, although requested by the defendant,
Section 4 of the “floor plan” chattel mortgage gave the dealer the right to sell the mobile homes. This provision provided also that Cardair would promptly account to Custom for the proceeds of such sale. This imposed an obligation upon Cardair to pay, hut did not impose any obligation on anyone else to pay Custom, in the absence of a showing of collusion or fraud between such third person and Cardair. Barnett was not called upon to follow the payment from Cardair to Custom or Armor Mobile Homes. Even if Barnett had had actual knowledge of the floor plan chattel mortgage, which fact is in dispute as of the date the conditional sales contracts were assigned to Barnett, paragraph 4 thereof would have assured Barnett that the transaction was safe so long as it was not shown that Barnett conspired with Cardair not to pay Custom.
We view the facts in this case differently from the trial judge. The transaction was in the regular course of business of a licensed new mobile home dealer. The conditional sales contracts were assigned to Barnett “without recourse” and contained a warranty clause that there were no liens against the mobile home described in the contract.
There is evidence that Custom was aware of sales of units “out of trust” being made by Cardair. Barnett had no knowledge of this. Custom could have stopped its agent or dealer and dealt with Cardair at any time after discovery, which should have been within 30 days after each sale, if the testimony of Custom’s witness to the effect that “lot checks” were made on about a 30 day basis, is true.
The conditional sales contract created an obligation to pay running from the buyer who signed the contract to the seller or his assignee. No obligation to pay Custom was created thereby as against the buyer. Barnett became the financier of the buyer, not of the dealer.
We hold that the provisions of the Uniform Trust Receipts Act[1] are applicable to the set of facts here involved and the honesty or dishonesty of the appellee’s dealer, Cardair, constituted an assumed risk on the part of Custom and not on the part of Barnett. The sale of the mobile home was made in the regular course of business, by a licensed dealer selling a “new” unit. Title was specifically retained by the seller and therefore until the purchase price was paid, no title could or would be issued to the buyer. There is a distinction between an instrument creating a lien against a title conveyed and withholding of title as security, so that the point raised about no application having been made to the Motor Vehicle Commissioner by the buyer is immaterial to the issues in this case.
We feel and so hold that Barnett stood in the shoes of the buyer and therefore its holding of the conditional sale or retained title contract was superior to the claim or right of Custom. This is therefore true as to the proceeds of any installment received or to be received by Barnett from the respective buyers.
To use a hypothetical case for emphasis, suppose Cardair had sold each of the mobile homes to buyers who paid Cardair cash, but immediately gave Barnett a chattel mortgage in order to obtain the money with which to pay Cardair, I don’t believe there could be any question but that Custom had lost its lien on the mobile home. It would have been forced to rely upon Cardair for payment under the Uniform Trust Receipts Act of Florida.
Barnett became the financier of the buyer the same as Custom was the financier of Cardair. Barnett did not rely upon Cardair for payment because it accepted the assignments “without recourse” on Cardair, thereby establishing beyond question the fact that *294 Barnett was financing and looking for payment from the buyer, who the appellee admits is an innocent purchaser, not required to go back to Cardair’s possession of the new mobile home for resale. The Motor Vehicle Title Law does not supersede the Uniform Trust Receipts Act of Florida,[2] to the extent of permitting a floor plan lien holder, which has given the dealer power of sale, to follow the vehicle with its lien into the hands of the bona fide purchaser in the regular course of business. Admittedly, there was no fraud charged against Barnett, and the Court only found carelessness or lack of prudent business concern in the transaction, but we think, and so hold, that Barnett had a lawful right to recognize the applicability of the Uniform Trust Receipts Act of Florida and to deal as it did with Cardair. Barnett was not required by custom of the trade nor contract to pay Custom Finance Co. Cardair was the only one charged with that duty, both by the custom of the trade and by contract. Custom Finance picked its trustee, Cardair, and therefore was bound by Car-dair’s actions.
Barnett picked its buyer (the conditional vendee) and was therefore bound by the vendee’s actions.
The judgment appealed from is therefore reversed and the trial court directed to enter judgment for the appellant herein.
SPECTOR, J., concurs.
RAWLS, Acting C. J., dissents.

. Ch. 673, Florida Statutes, F.S.A.

. Ch. 673.09, Florida Statutes, F.S.A.